# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Kathryn L. Loomis

OTTGEN v KATRANJI

Docket No. 163216. Argued October 12, 2022. Decided July 14, 2023.

Candi Ottgen and her husband, Patrick Ottgen, brought a medical malpractice action in the Ingham Circuit Court against Abdalmaijid Katranji, M.D., and others, alleging that Katranji had negligently performed two thumb surgeries on Candi Ottgen on May 1, 2017, and July 23, 2017. Plaintiffs filed the action on April 11, 2019, focusing their complaint on the first surgery, but they did not attach an affidavit of merit (AOM) to the complaint as required by MCL 600.2912d(1). On May 9, 2019, defendants moved for summary disposition under MCR 2.116(C)(7) pursuant to *Scarsella v Pollak*, 461 Mich 547 (2000), which held that filing a medical malpractice complaint without an AOM was ineffective to commence the action and thereby toll the two-year statutory limitations period. Plaintiffs responded by filing an amended complaint with an AOM that had purportedly been executed on January 30, 2019, but was not attached to the original complaint because of a clerical error. Plaintiffs also separately requested permission to make the late filing and contended that it related back to the original complaint. The trial court, Clinton Canady III, J., held that *Scarsella* was inapplicable because the AOM was completed when the original complaint was filed and its omission from the filing was inadvertent. The trial court also permitted plaintiffs to file their late AOM and allowed it to relate back to the April 2019 complaint. The Court of Appeals, CAMERON, P.J., and BORRELLO and REDFORD, JJ., affirmed in part and reversed in part in an unpublished per curiam opinion issued May 20, 2021 (Docket No. 350767), holding that *Scarsella* applied and, accordingly, that plaintiffs' complaint was untimely with regard to the first surgery, rendering the April 2019 complaint ineffective and leaving nothing for the subsequently filed May 13, 2019 amended complaint to relate back to. Because the dismissal was on statute-of-limitations grounds, the Court of Appeals held that it was with prejudice. The Supreme Court granted plaintiffs' application for leave to appeal, asking the parties to address whether *Scarsella* was correctly decided and whether the plaintiffs' complaint should have been dismissed without prejudice. 508 Mich 1002 (2021).

In a unanimous opinion by Justice VIVIANO, the Supreme Court *held*:

*Scarsella* was erroneously decided and failed to survive a stare decisis analysis, and it was therefore overruled. Filing an AOM under MCL 600.2912d(1) is not required to commence a medical malpractice action and toll the statutory limitations period. Instead, the normal tolling rules apply to medical malpractice actions, and tolling occurs upon the filing of a timely served

complaint. A failure to comply with MCL 600.2912d(1) can still be a basis for dismissal of a case; however, the dismissal cannot be based on statute-of-limitations grounds. Because the courts below have not considered the nature of dismissals for violations of MCL 600.2912d(1), the case was remanded to the trial court for further proceedings.

1. The starting point for an action is the filing of a complaint with a court, as clearly stated by MCL 600.1901 and MCR 2.101(B). Plaintiffs must file the action within the applicable statutory limitations period, MCL 600.5805(1), which for medical malpractice actions generally is two years, MCL 600.5805(8). MCL 600.5856(a) reflects this framework by providing that the period of limitations is generally tolled once the complaint is filed. None of these provisions suggests that the tolling of the medical malpractice period of limitations requires something more than the filing and timely service of a complaint, nor does any other statute or court rule provide such a requirement, and MCL 600.5838(2) expressly provides that the general tolling rules apply to medical malpractice actions. Michigan caselaw previously rejected the straightforward conclusion that a medical malpractice action commences when the complaint is filed on the basis of MCL 600.2912d(1), the statutory provision requiring an AOM to be filed with a medical malpractice complaint. But that provision says nothing about the statute of limitations or tolling and, in fact, indicates that the AOM and the complaint are two separate documents. *Scarsella*, in particular, erred by concluding that because the AOM is mandatory, a case cannot commence without it and the statutory limitations period therefore could not be tolled. Because the AOM requirement remains mandatory and has effect even if tolling occurs, there was no need to resort to the interpretive principle that, where two statutes conflict, the specific statutory provisions trump more general provisions. The fact that the Legislature expressly provided that filing the required notice of intent to sue would toll the statutory limitations period, but enacted no similar provision respecting AOMs, suggests an AOM was not needed for tolling to occur. The Michigan Supreme Court adopted the essence of this reasoning when addressing a similar question in *Progress Mich v Attorney General*, 506 Mich 74, 103 (2020), which supports the conclusion that *Scarsella* was wrongly decided. Contrary to defendants' argument, the exceptions to the AOM requirement in MCL 600.2912d(2) and (3) do not bolster their position but rather show that a case indeed commences even when the AOM is not filed, because if there were no case, a party could not move for or obtain an extension. These exceptions remain legally operative regardless of whether the statutory limitations period has been tolled. Further, overruling *Scarsella* would not allow a plaintiff to repeatedly file without an AOM and thereby indefinitely extend the period in which to obtain an AOM, because courts are not prohibited from dismissing such cases with prejudice or imposing a lesser sanction where appropriate. In short, the plain text, read in light of the statutory context, compelled the conclusion that an AOM is not required to commence a medical malpractice action or toll the period of limitations. Therefore, *Scarsella* was wrongly decided.

2. Before overruling a decision, the Michigan Supreme Court considers whether the decision defies practical workability, whether reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the questioned decision. The first factor, "practical workability," involves the reception of the decision by courts and parties and the ease of its application. Considerations that are relevant to this analysis include whether the decision has been met with criticism, whether its application has been contested or difficult, and, in the context of statutory interpretation, whether a reader of the underlying statute would be unable to rely on its plain meaning in light of the decision's departure from that meaning. *Scarsella* did little

more than adopt the Court of Appeals' opinion in that case and was not joined by the full Court. Over the years since, numerous members of the Supreme Court and the Court of Appeals have continued to question *Scarsella*, and parties have continued to challenge it. These sustained attacks were reasonable given that *Scarsella*'s interpretive gloss substantially deviated from the plain meaning of the statutes, making it impossible for a reader to rely on the text of the statutes without also combing through past judicial decisions. Moreover, the decision gave rise to a series of workability problems involving the uncertain effects of *Scarsella*'s analysis on related questions. The second factor requires consideration of "reliance interests," which might be shared by certain individuals, groups, courts, other governmental institutions, or the public at large. *Scarsella* involves a procedural rule pertaining to civil litigation between private plaintiffs. Thus, there is no apparent reliance by governmental institutions or the public at large. And while courts have relied on it, their reliance has been marked by struggles with applying the case. With regard to group and individual interests, defendants cannot rely on the rule from *Scarsella* given that it springs into effect only once a malpractice complaint has been filed without an AOM, which is not something that defendants can plan for, and no one has suggested that the practice of medicine has been altered in reliance on *Scarsella*. For these reasons, it is difficult, if not impossible, to see how potential medical malpractice defendants could have entered into contracts, provided medical services, or engaged in ventures on the basis of *Scarsella*. Moreover, any disruption caused to parties by overruling *Scarsella* would be minimal, given that lawsuits filed without an AOM will still be subject to dismissal, simply on other grounds. Finally, there have been no changes in the law or facts that weigh in favor of or against overruling *Scarsella*. Because *Scarsella* was wrongly decided, proved difficult to apply and disruptive to the state's jurisprudence, and did not benefit from sufficient reliance interests, it was overruled.

Court of Appeals judgment reversed; case remanded to the trial court for further proceedings.

Justice ZAHRA, concurring, agreed that that filing an AOM under MCL 600.2912d(1) is not required to commence a medical malpractice action and that the running of the statutory limitations period is tolled upon the filing of a timely served complaint. He wrote separately to note that his support for the Court's opinion was consistent with his continuing support of the Court's decision in *Kirkaldy v Rim*, 478 Mich 581 (2007), which held that the proper remedy for a defective AOM is dismissal without prejudice, leaving the plaintiff with whatever time remains in the limitations period within which to file a complaint accompanied by a conforming AOM. He suggested that if, as in *Scarsella*, the AOM was not executed until after the statutory limitations period had passed, the AOM should not be afforded the same presumption of validity, leaving to the trial court's discretion whether dismissal with prejudice was appropriate. While he agreed that a stare decisis analysis supported the overruling of *Scarsella*, he believed that changes in the law weighed in favor of overruling *Scarsella*. Specifically, in *Kirkaldy*, the Court relied on the presumption that a filed AOM is presumed valid to distinguish between cases in which an AOM had not been filed and those in which a defective, but presumably valid, AOM had been filed. Then, in *Saffian v Simmons*, 477 Mich 8 (2007), the Court held that where an AOM is filed with a medical malpractice complaint, a defendant must timely answer or otherwise file some responsive pleading to the complaint, or else be subject to a default. *Saffian* further held that a defendant's unilateral belief that an AOM does not conform to the requirements of MCL 600.2912d does not constitute good cause for failing to respond timely to a medical malpractice complaint, and thus is

not a proper basis to challenge the entry of a default. Under these cases, a defendant must answer a complaint, and if no AOM is attached to the complaint, a defendant must still answer the complaint and presume that a plaintiff is seeking an extension to file an AOM. Thus, Justice ZAHRA observed that *Scarsella* has now largely been eroded by caselaw and amendments to court rules, namely MCR 2.112 and MCR 2.118, which all were directed toward alleviating a disorderly pleading process in medical malpractice cases. Because he believed that the majority's opinion was consistent with this line of cases and with maintaining a more orderly and efficient administration of justice, he concurred with the Court's opinion.

Justice BOLDEN did not participate in the disposition of this case because the Court considered it before she assumed office.

# OPINION

Chief Justice:
    Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED July 14, 2023

S T A T E   O F   M I C H I G A N

SUPREME COURT

CANDI OTTGEN and PATRICK OTTGEN,

    Plaintiffs-Appellants,

v

No. 163216

ABDALMAIJID KATRANJI, M.D.,
KATRANJI RECONSTRUCTIVE
SURGICAL INSTITUTE, KATRANJI
RECONSTRUCTIVE SURGERY
INSTITUTE, PLLC, KATRANJI FAMILY
FOUNDATION, KATRANJI HAND
CENTER, and KATRANJI INSTITUTE,

    Defendants-Appellees.

BEFORE THE ENTIRE BENCH (except BOLDEN, J.)

VIVIANO, J.

The question in this case is narrow and seemingly straightforward: when does a medical malpractice action begin? The answer is important because a medical malpractice plaintiff may not bring or maintain an action if the action is not commenced within the statutory limitations period. The running of the statutory limitations period usually is tolled

when a timely served complaint is filed. But this Court has held that because medical malpractice plaintiffs must file an affidavit of merit (AOM) along with their complaint under MCL 600.2912d(1), a medical malpractice action does not commence (and the limitations period under MCL 600.5805 is not tolled) if the plaintiff fails to file an AOM with the complaint. *Scarsella v Pollak*, 461 Mich 547; 607 NW2d 711 (2000). Today we overrule this erroneous precedent. Filing an AOM under MCL 600.2912d(1) is not required to commence a medical malpractice action and toll the statutory limitations period. Instead, the normal tolling rules apply to medical malpractice actions, and tolling occurs upon the filing of a timely served complaint. Nevertheless, failure to comply with MCL 600.2912d(1) can still be a basis for dismissal of a case—just not on statute-of-limitations grounds. Because the courts below have not considered the nature of dismissals for violations of MCL 600.2912d(1), we remand the case to the trial court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Candi Ottgen underwent two thumb surgeries performed by defendant Abdalmaijid Katranji, M.D. The first occurred on May 1, 2017, and the second on July 23, 2017. Plaintiff and her husband subsequently filed the present action on April 11, 2019, focusing their complaint on the first surgery. An AOM was not attached to the complaint as required by MCL 600.2912d(1). On May 9, 2019, defendants moved for summary disposition pursuant to this Court's decision in *Scarsella*, 461 Mich at 553, which held that the filing of a medical malpractice complaint without an AOM was ineffective to commence the action and thereby toll the statutory limitations period. Defendants here

2

accordingly argued that because the AOM had not been filed with the complaint, the two-year limitations period was never tolled and had expired. Plaintiffs responded by filing an amended complaint with an AOM that had purportedly been executed on January 30, 2019; they also separately requested permission to make the late filing and contended it related back to the original complaint. They explained that the AOM had been prepared but was not attached to the original complaint because of a clerical error.

The trial court held that *Scarsella* was inapplicable because the AOM here was completed when the original complaint was filed and had been inadvertently omitted from the filing. The trial court also permitted plaintiffs to file their late AOM and allowed it to relate back to the April 2019 complaint. The Court of Appeals reversed in an unpublished per curiam opinion, holding that *Scarsella* applied and that plaintiffs' complaint was untimely with regard to the first surgery but was timely with regard to the July 23 surgery. Under *Scarsella*, it said, the April 2019 complaint was ineffective. Therefore, "there was nothing for the subsequently filed May 13, 2019 amended complaint to relate back to." Because the dismissal was on statute-of-limitations grounds, the Court held that it was with prejudice.

Plaintiffs subsequently sought leave to appeal in this Court. We granted leave, asking the parties to "address whether *Scarsella* . . . was correctly decided and whether the plaintiffs' complaint, which was filed without an affidavit of merit contrary to MCL 600.2912d(1), should have been dismissed without prejudice." *Ottgen v Katranji*, 508 Mich 1002, 1002 (2021).

3

## II.  STANDARD OF REVIEW

"A trial court's decision on a motion for summary disposition is reviewed de novo."

*Meyers v Rieck*, 509 Mich 460, 468; 983 NW2d 747 (2022).

## III.  ANALYSIS

We must determine when a medical malpractice action commences, such that the running of the statutory limitations period is tolled.  Specifically, does the requirement in MCL 600.2912d(1) that a plaintiff must file an AOM with the complaint have any effect on when an action is commenced or when the limitations period is tolled?  And if the answer is "no," then we must consider whether to overrule *Scarsella*.

### A.  COMMENCEMENT OF AN ACTION, TOLLING, AND THE AOM

Our statutes clearly demarcate the starting point for an action in court: "A civil action is commenced by filing a complaint with the court."  MCL 600.1901; see also MCR 2.101(B) ("A civil action is commenced by filing a complaint with a court.").  And plaintiffs must file the action within the applicable statute-of-limitations period, MCL 600.5805(1),[1] which for medical malpractice actions generally is two years, MCL 600.5805(8).  MCL 600.5856(a) reflects this framework by providing that the period of limitations is tolled once the complaint is filed (if the complaint is also served on the defendant pursuant to our court rules).  In other words, once a timely served complaint is filed, the limitations period generally is tolled.

---

[1] MCL 600.5805(1) reads, "A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section."

None of these provisions suggests that the tolling of the medical malpractice period of limitations requires something more than the filing and timely service of a complaint. Nor does any other statute or court rule provide such a requirement. In fact, the Legislature has expressly indicated that the general tolling rules above apply to medical malpractice actions:

> Except as otherwise provided in section 5838a or 5838b, an action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed in sections 5805 or 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. [MCL 600.5838(2).]

As noted above, § 5805 establishes the general two-year limitations period, and § 5856(a) provides for tolling when the complaint is filed and served.[2] The exceptions mentioned in § 5838(2) are similarly inapplicable. Section 5838b deals with legal malpractice. Section 5838a pertains to medical malpractice but is consistent with, and nearly identical to, § 5838(2); i.e., it provides that the general tolling provision applies to medical malpractice actions.[3]

---

[2] The remaining provisions in §§ 5851 through 5856 include accrual dates and specific tolling provisions that are not relevant here.

[3] MCL 600.5838a(3) states in relevant part:

> An action involving a claim based on medical malpractice under circumstances described in subsection (2)(a) or (b) may be commenced at any time within the applicable period prescribed in section 5805 or sections 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. . . . A medical malpractice action that is not commenced within the time prescribed by this subsection is barred.

"Sections 5838 and 5838a thus state that the normal rules in § 5805 and § 5856(1) 'prescribe[]' the commencement of medical malpractice cases. Further, neither § 5838 nor § 5838a includes [the AOM requirement, MCL 600.]2912d(1) in the list of statutes 'prescrib[ing]' when to commence an action." *Castro v Goulet*, 501 Mich 884, 888 (2017) (VIVIANO, J., concurring) (first and third alterations in original). Under these statutes, then, "the usual tolling regime would apply to medical malpractice cases, i.e., under § 5856(1), the running of the statutory limitations period would be tolled when the complaint is filed and served." *Id*.

Unfortunately, our caselaw has rejected this straightforward conclusion based on a statutory provision, MCL 600.2912d(1), that says nothing about the statute of limitations or tolling. Indeed, that section indicates that the AOM and the complaint are two separate documents. Section 2912d(1) states that "the plaintiff . . . shall file with the complaint an affidavit of merit signed by a health professional . . . ." In *Ligons v Crittenton Hosp*, 490 Mich 61, 82-84; 803 NW2d 271 (2011), we correctly observed that the AOM was not part of the complaint itself.

But we had already gone astray in *Scarsella v Pollak*, 461 Mich 547, 552; 607 NW2d 711 (2000), when we addressed the effect of the failure to file an AOM with the complaint. We relied heavily on the statute's use of the word "shall," which we took to "indicate[] that an affidavit accompanying the complaint is mandatory and imperative." *Id*. at 549. From this, we inferred "that, for statute of limitations purposes in a medical malpractice case, the mere tendering of a complaint without the required affidavit of merit is insufficient to commence the lawsuit." *Id*. Accordingly, we adopted the Court of Appeals' opinion holding that a medical malpractice action did not commence, and the

6

period of limitations was not tolled, when the AOM was not filed with the complaint as required by MCL 600.2912d(1). In subsequent cases, we have characterized § 2912d(1) as the more specific provision on tolling in the medical malpractice context, giving it precedence over the general rules in § 1901 and § 5856. See, e.g., *Ligons*, 490 Mich at 82-84.

The problem with *Scarsella*'s reasoning is not its conclusion that the AOM requirement is mandatory and must be followed. No one disputes this. Rather, *Scarsella* erred by concluding that because the AOM is mandatory, a case cannot commence without it and the statutory limitations period therefore cannot be tolled. Put differently, *Scarsella* appears premised on the mistaken belief that to have any meaning or effect, § 2912d's AOM requirement must relate to tolling. But allowing the limitations period to be tolled when the plaintiff omits the AOM "would not . . . vitiate the requirements of § 2912d(1): plaintiffs would still have to file the AOM and their claims might be dismissed when they failed to do so, just not on statute of limitations grounds." *Castro*, 501 Mich at 886 (VIVIANO, J., concurring). The AOM requirement, in other words, remains mandatory and has effect even if tolling occurs. For that same reason, there is no need to resort to the interpretive principle that, where two statutes conflict, the specific statutory provisions trump more general provisions. *Id*. Section 2912d(1) does not conflict with § 1901, § 5856, or any of the other general provisions mentioned above—indeed, as noted, § 2912d(1) is silent about the limitations period and tolling.

The silence in § 2912d(1) is particularly meaningful here. That is because the Legislature has shown it "knows how to tweak the limitations period in the medical malpractice context," but it did not do so for AOMs. *Castro*, 501 Mich at 887 (VIVIANO,

7

J., concurring). "[I]n enacting Public Act 78 of 1993—the public act that created the affidavit-of-merit requirement—the Legislature added another procedural prerequisite for would-be medical malpractice plaintiffs, requiring them to provide a defendant with notice of intent to sue 'not less than 182 days before the action is commenced.'" *Progress Mich v Attorney General*, 506 Mich 74, 103; 954 NW2d 475 (2020) (MCCORMACK, C.J., concurring). In that same public act, the Legislature specifically provided for tolling during the notice period. MCL 600.5856(d), as amended by 1993 PA 78 ("The statutes of limitations or repose are tolled . . . [i]f, during the applicable notice period under section 2912b, a claim would be barred by the statute of limitations or repose, for not longer than a number of days equal to the number of days in the applicable notice period after the date notice is given in compliance with section 2912b."). "That the Legislature provided for the [notice of intent's] tolling effect, but not the AOM's, suggests the AOM may not be needed for tolling to occur." *Castro*, 501 Mich at 887 (VIVIANO, J., concurring). This analysis of the relevant statutory text inexorably leads to the conclusion that the filing of an AOM is not necessary to commence a medical malpractice action and toll the statutory limitations period.

This Court has already adopted the essence of the reasoning above when addressing a similar question in *Progress Mich v Attorney General*. In that case, the plaintiff sued in the Court of Claims, where complaints must be signed and verified per MCL 600.6434(1). *Progress Mich*, 506 Mich at 82. The Court of Appeals analogized the verification requirement to the AOM requirement and applied *Scarsella*, holding that an unverified complaint was insufficient to commence the case and toll the statutory limitations period. *Id*. at 84-85. We reversed, noting at the outset that the statutory violation, i.e., the failure

8

to verify the complaint, subjected the case to dismissal. *Id*. at 95. We then stated that *Scarsella* involved a different statutory scheme and was, on its face, inapplicable. *Id*. at 96.

*Progress Mich* went on to reject the extension of *Scarsella*'s logic, offering many of the same reasons described above. We noted, for example, that nothing in MCL 600.6434 contradicted the general rules pertaining to commencement of actions, § 1901, or the tolling of the statute of limitations, § 5856. *Id*. at 97-98. "It is not inconsistent to require a plaintiff to comply with the verification requirement in MCL 600.6434 while at the same time permitting the action to be commenced under MCL 600.1901 and the limitations period tolled under MCL 600.5856(1)." *Id*. at 98. We again emphasized that an unverified complaint was still subject to dismissal on grounds other than the violation of the statute of limitations. *Id*. These same rationales apply with equal force in the present context. Thus, *Progress Mich* supports the conclusion that *Scarsella* was wrongly decided.

To avoid this conclusion, defendants attempt to rely on the statutory context surrounding the AOM requirement, specifically the exceptions to that requirement. But these exceptions bolster, rather than weaken, our conclusion. Under § 2912d(2), "[u]pon motion of a party for good cause shown, the court . . . may grant the plaintiff or . . . the plaintiff's attorney an additional 28 days in which to file the affidavit . . . ." And per § 2912d(3), "[i]f the defendant in an action alleging medical malpractice fails to allow access to medical records within the time period set forth in section 2912b(6), the affidavit required under subsection (1) may be filed within 91 days after the filing of the complaint." These exceptions show that a case indeed commences even when the AOM is not filed: if there were no case, then how would the party move for an extension under § 2912d(2) or obtain an extension under § 2912d(3)? There would be no action in which to file a motion

9

seeking that extension. The fact that the Legislature provided for extensions when the AOM was not filed with the complaint indicates that the Legislature believed, in accordance with the textual analysis above, that an action commences under § 1901 with the filing of the complaint.

Defendants contend that our conclusion today would render the exceptions meaningless and, because we seek to avoid such interpretations, we must therefore uphold *Scarsella*. See generally *People v Pinkney*, 501 Mich 259, 283; 912 NW2d 535 (2018) (noting "that '[w]hen possible, we strive to avoid constructions that would render any part of the Legislature's work nugatory' ") (citation and emphasis omitted). Defendants are mistaken. The exceptions in § 2912d provide a plaintiff two narrow avenues to obtain additional time to procure an AOM without the malpractice action being subject to dismissal for lack of an AOM. The exceptions are legally operative regardless of whether the statutory limitations period has been tolled.

Defendants next present a parade of horribles that is based on a misapprehension of our caselaw. If we overrule *Scarsella*, defendants warn, then a plaintiff's failure to file an AOM would lead only to dismissal *without prejudice* (as opposed to, under *Scarsella*, dismissal with prejudice for violation of the statute of limitations). A dismissal without prejudice allows a plaintiff to refile the case, assuming the limitations period has not otherwise expired. See *Scarsella*, 461 Mich at 551-552. Consequently, without *Scarsella*, when a complaint is filed without the AOM and the case is subsequently dismissed without prejudice, the limitations period would be tolled in the interim. As a result, a plaintiff who fails to file an AOM will arguably always, or almost always, have some time remaining after the dismissal without prejudice in which to refile his or her case. And, according to

10

defendants, a plaintiff could again file without an AOM, as many times as he or she would like, without any consequence to his or her ability to keep refiling. A plaintiff could thereby indefinitely extend the period in which to obtain an AOM, far past the limited periods allowed by § 2912d(2) and § 2912d(3).

Defendants' argument depends on the proposition that dismissal for failure to file an AOM must be without prejudice and that a court is therefore powerless to prevent a serial filer from stretching out his or her case indefinitely. While we need not decide whether, and under what circumstances, dismissal with prejudice is appropriate, we take this opportunity to note that the caselaw relied on by defendants nowhere *requires* dismissals without prejudice or *prohibits* dismissals with prejudice. The key case, cited by both parties here, is *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26; 594 NW2d 455 (1999). There, we observed that the Court of Appeals had, in a previous case, declined to dismiss at all when the plaintiff filed the complaint without an AOM but served the complaint with the AOM. *Id*. at 47, discussing *VandenBerg v VandenBerg*, 231 Mich App 497; 586 NW2d 570 (1998). We distinguished the facts in *VandenBerg* from the situation in *Dorris*, where the AOM had never been filed. We then held that, "[u]nder these circumstances, . . . dismissal without prejudice would be *an* appropriate sanction for plaintiff's failure to comply with § 2912d." *Id*. at 48 (emphasis added).

*Dorris* does not lay down a rule that dismissal without prejudice is *always* required for violations of the AOM requirement in § 2912d. The result in *Dorris* was expressly tied to the circumstances of that case. Moreover, *Dorris* did not mention or apply any of the

11

general rules pertaining to dismissals, including MCR 2.504.[4]  *Dorris*'s fact-bound and circumscribed analysis approved one remedy for AOM violations under the facts of that case, but it simply did not answer the question what rules and standards apply to determine whether dismissal should be with or without prejudice.[5]  We need not answer that question now, however, as the parties should have a full opportunity to litigate this question below.

Moreover, even if dismissal without prejudice is often the appropriate remedy, defendants' forebodings about the risk of serial refilings are ill-founded.  As noted above, defendants warn that without the protection of *Scarsella*, plaintiffs will be able to file an action without an AOM, proceed through the dispositive motion stage, have their case dismissed without prejudice, and then refile again without an AOM, starting the whole process over, *ad infinitum*.  Plaintiffs would undertake all this simply to buy extra time to acquire an AOM.  Although we need not decide the question now, it is worth noting that in such circumstances—an intentional violation of § 2912d to create additional time for filing an AOM or otherwise improperly delay the proceedings—a trial court might opt to dismiss the case *with prejudice*.  By contrast, an inadvertent or quickly rectified failure to attach an AOM might merit a lesser sanction.  In any event, we cannot conclude that the Legislature was concerned about the possibility of such gamesmanship, since it failed to expressly link § 2912d's AOM requirement to tolling.

---

[4] MCR 2.504 prescribes the rules pertaining to voluntary and involuntary dismissals, including when those dismissals are presumed to be with or without prejudice.

[5] Subsequent cases have noted that dismissal without prejudice is appropriate under *Dorris*, but they have not indicated that such dismissal is *required*, nor have they elaborated on *Dorris*'s analysis.  See, e.g., *Scarsella*, 461 Mich at 551-552 ("As we explained in *Dorris*, a plaintiff who files a medical-malpractice complaint without the required affidavit is subject to a dismissal without prejudice, and can refile properly at a later date.").

12

In short, the plain text, read in light of the statutory context, compels the conclusion that an AOM is not required to commence a medical malpractice action or toll the period of limitations. We therefore conclude that *Scarsella* was wrongly decided.

## B. STARE DECISIS

Determining that the decision in *Scarsella* was erroneous is only the first step in the analysis. Before overruling it, we must also examine "whether the decision . . . defies 'practical workability,' whether reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the questioned decision." *Robinson v Detroit*, 462 Mich 439, 464; 613 NW2d 307 (2000). The first factor, "practical workability," involves the reception of the decision by courts and parties and the ease of its application. Considerations that are relevant to this analysis include whether the decision been met with criticism, whether its application been contested or difficult, and, in the context of statutory interpretation, whether a reader of the underlying statute would be unable to rely on its plain meaning in light of the decision's departure from that meaning.[6]

With regard to criticism, the opinion in *Scarsella*, which did little more than adopt the Court of Appeals' opinion in that case, was not joined by the full Court. *Scarsella*, 461

---

[6] See *Robinson*, 462 Mich at 466 (noting that the decision at issue had been repeatedly questioned); see also *Paige v Sterling Hts*, 476 Mich 495, 510; 720 NW2d 219 (2006) ("[The decision at issue] defies practical workability because a person reading the statute surely would not know that he or she cannot rely on what the statute plainly says. That is, a reader and follower of the statute would, because of [the decision's] rewrite, not be behaving in accord with the law. Such a regime is unworkable in a rational polity."); *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 584; 702 NW2d 539 (2005) (finding that a decision defied practical workability when it caused confusion in the lower courts and required additional clarification from this Court).

13

Mich at 554 (CAVANAGH and KELLY, JJ., dissenting) (declining to resolve the case in a per curiam opinion and instead stating that they would either grant or deny leave to appeal). Over the years since, numerous members of this Court and the Court of Appeals have continued to question *Scarsella*,[7] and parties have continued to challenge it.[8] There has been good reason for these sustained attacks. As explained above, *Scarsella*'s interpretive gloss substantially deviates from the plain meaning of the statutes, making it impossible for a reader to rely on the text of the statutes without also combing through past judicial

---

[7] See *Progress Mich*, 506 Mich at 100 (MCCORMACK, C.J., concurring) ("I would . . . overrule our decision in *Scarsella*[.]"); *Castro*, 501 Mich at 890 (VIVIANO, J., concurring) (calling for reconsideration of *Scarsella* in light of its "shaky legal foundation and the continuing dislocations in our law it has caused"); *Wade v McCadie*, 503 Mich 1024, 1024 (2019) (VIVIANO, J., concurring) ("I continue to question whether *Scarsella* was correctly decided."); *Kirkaldy v Rim*, 478 Mich 581, 586-587; 734 NW2d 201 (2007) (CAVANAGH, J., concurring) ("I believe that *Scarsella* . . . was incorrectly decided . . . . I would hold that under the plain language of MCL 600.5856(a), the period of limitations is tolled when a complaint is filed, regardless of whether an affidavit of merit is filed with the complaint."); *id*. at 588 (KELLY, J., concurring) ("[M]eritorious arguments exist indicating that the Court misread MCL 600.5856(a) seven years ago when it acted peremptorily in *Scarsella*."); *Kirkaldy v Rim (On Remand)*, 266 Mich App 626, 631; 702 NW2d 686 (2005) ("We believe that the Supreme Court should reexamine the holding in *Scarsella* when given the opportunity, if not to question whether the decision was consistent with well-established principles of statutory construction, then to determine whether it was proper for this Court to extend the holding to cases in which an affidavit of merit, ultimately found to be nonconforming, was actually filed with the complaint."), rev'd 478 Mich 581; *Young v Sellers*, 254 Mich App 447, 453; 657 NW2d 555 (2002) (requesting that this Court "revisit or distinguish *Scarsella*" to address situations in which the failure to file the AOM was inadvertent).

[8] See *Tyra v Organ Procurement Agency of Mich*, 498 Mich 68, 93; 869 NW2d 213 (2015) (noting the plaintiffs' argument that *Scarsella*, among other cases, should be overruled as inconsistent with the statutory text); *Kirkaldy v Rim*, Application for Leave to Appeal (July 19, 2005) (Docket No. 129128), p 14 ("This Court should grant leave to appeal to consider the question of whether the *Scarsella* Court's interpretation of MCL 600.5856(a) directly conflicts with the literal language of that statute and, for that reason, should be overruled.") (formatting altered).

decisions. Moreover, the decision "has given rise to a series of workability problems" involving the uncertain effects of *Scarsella*'s analysis on related questions. *Castro*, 501 Mich at 888 (VIVIANO, J., concurring). This comes as no surprise, for *Scarsella* created a class of cases appropriately "describe[d] as 'spectral': cases assigned a docket number and litigated in the courts, but somehow never begun because the cases were a 'nullity.' " *Progress Mich*, 506 Mich at 105 (MCCORMACK, C.J., concurring). What are courts and parties to do in cases that are not really cases at all?

One obvious question that has arisen is whether, if no AOM is filed and no case commenced, defendants have any obligation to raise this noncompliance with § 2912d as an affirmative defense, as they are usually required to do with such defenses. See *Tyra v Organ Procurement Agency of Mich*, 498 Mich 68, 87-88; 869 NW2d 213 (2015), discussing *Auslander v Chernick*, 480 Mich 910 (2007). Relying on *Scarsella*, we answered in the negative. *Auslander*, 480 Mich at 910. The result, if followed, would create chaos: it would invite defendants to ignore lawsuits filed without an AOM, even if they were otherwise timely filed. If a default judgment is then entered against them, defendants could still prevail by attacking the lack of an AOM, at which point the limitations period might have expired and the plaintiffs would have no opportunity to cure the defect. See *Tyra*, 498 Mich at 105 (VIVIANO, J., dissenting), citing *Saffian v Simmons*, 267 Mich App 297, 307; 704 NW2d 722 (2005). Yet, marking the unworkability of such a system, it appears that defendants generally have disregarded *Scarsella*'s invitation and instead "continue to follow the court rules and statutes by filing answers and affirmative defenses." *Tyra*, 498 Mich at 106.

15

Another class of workability problems, which we have dealt with on multiple occasions, involved the question of whether a noncompliant AOM filed with the complaint is sufficient to commence the case and toll the statutory limitations period. See *Progress Mich*, 506 Mich at 104-105 (MCCORMACK, C.J., concurring) (collecting cases). Yet another difficulty that arose from *Scarsella* was determining whether the AOM is part of the complaint or a separate document. See *Ligons*, 490 Mich at 82-84. Thus, while the rule articulated by *Scarsella* might be straightforward—if there is no AOM with the complaint, then there is no action and thus no tolling—the application and effects of the rule in related areas have been anything but clear.

Next, we must consider reliance interests, which might be shared by certain individuals, groups, courts, other governmental institutions, or the public at large. Kozel, *Stare Decisis as Judicial Doctrine*, 67 Washington & Lee L Rev 411, 452 (2010). *Scarsella* involves a procedural rule pertaining to civil litigation between private plaintiffs. Thus, there is no apparent reliance by governmental institutions or the public at large. And while courts have relied on it, their reliance has been marked by struggles with applying the case, as discussed above.[9]

---

[9] Defendants contend that overruling *Scarsella* would destabilize the law by endangering other precedents that relied on *Scarsella*. In particular, they believe that *Scarsella* undergirds this Court's decisions in *Burton v Reed City Hosp Corp*, 471 Mich 745; 691 NW2d 424 (2005); *Boodt v Borgess Med Ctr*, 481 Mich 558; 751 NW2d 44 (2008); and *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57; 642 NW2d 663 (2002). *Burton* held that a medical malpractice action filed before expiration of the notice period in MCL 600.2912b does not commence an action or toll the limitations period. *Burton*, 471 Mich at 747. *Boodt* and *Roberts* stand for the proposition that a defective notice of intent is insufficient to toll the limitations period even if the plaintiff files a complaint and an AOM. *Boodt*, 481 Mich at 561-562. We need not decide the effect, if any, of today's decision on those cases. It is worth noting, however, that the statutory provision at issue in them, § 2912b(1),

16

With regard to group and individual interests, the rule from *Scarsella* springs into effect only once a malpractice complaint has been filed without an AOM. Plaintiffs in this situation, of course, do not rely on the rule given that a plaintiff is unlikely to intentionally put their malpractice claims at risk of dismissal. Even defendants who benefit from it could have little ability to rely, *ex ante*, on the rule. The fact that an AOM is required to toll a case is not something that defendants can plan for until an AOM-less complaint is filed. No one has suggested that the practice of medicine has been altered in reliance on *Scarsella.* For these reasons, it is difficult, if not impossible, to see how potential medical malpractice defendants could have entered into contracts, provided medical services, or engaged in ventures on the basis of *Scarsella*. Moreover, any disruption caused to parties by overruling *Scarsella* is minimal, as lawsuits filed without an AOM will still be subject to dismissal, simply on other grounds.

Finally, there have been no changes in the law or facts that weigh in favor of or against overruling *Scarsella*. Consequently, the stare decisis analysis leads to the conclusion that *Scarsella* must be overruled. It was wrongly decided, has proved difficult to apply and disruptive to our jurisprudence, and does not benefit from sufficient reliance interests.

## IV. CONCLUSION

The general rule that for purposes of the statute of limitations, a case commences when a timely served complaint is filed applies to medical malpractice actions just as it

---

contains language different from § 2912d(1)—a difference that might justify the results reached in those cases.

does to other civil actions.  The statutes make this clear.  The AOM requirement in MCL 600.2912d does not explicitly or implicitly involve the tolling of the statutory limitations period.  *Scarsella*'s contrary conclusion has proved unworkable, and we now overrule it.  Accordingly, we reverse the judgment of the Court of Appeals.  But this does not mean that the AOM requirement lacks teeth.  As discussed above, nothing in our caselaw requires a trial court to dismiss an action *without prejudice* when the AOM requirement has been violated.  Because the lower courts and the parties have had no occasion to consider the standards relevant to this question, i.e., whether dismissal here should be with or without prejudice, we remand the case to the trial court for proceedings not inconsistent with this opinion.

David F. Viviano
Elizabeth T. Clement
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch

18

STATE OF MICHIGAN

SUPREME COURT

CANDI OTTGEN and PATRICK OTTGEN,

      Plaintiffs-Appellants,

v                                      No. 163216

ABDALMAIJID KATRANJI, M.D.,
KATRANJI RECONSTRUCTIVE
SURGICAL INSTITUTE, KATRANJI
RECONSTRUCTIVE SURGERY
INSTITUTE, PLLC, KATRANJI FAMILY
FOUNDATION, KATRANJI HAND
CENTER, and KATRANJI INSTITUTE,

      Defendants-Appellees.

_____

ZAHRA, J. (*concurring*).

I agree with the Court's decision that "[f]iling an [affidavit of merit (AOM)] under MCL 600.2912d(1) is not required to commence a medical malpractice action and toll the statutory limitations period. Instead, the normal tolling rules apply to medical malpractice actions, and tolling occurs upon the filing of a timely served complaint." The Court properly resolves the problems that have developed since this Court's decision in *Scarsella v Pollak*,[1] which too broadly prohibited a medical malpractice action from commencing without an AOM even though a party is entitled to move for an extension under MCL 600.2912d(2) or obtain an extension under MCL 600.2912d(3) to submit an AOM after a complaint has been filed.

_____

[1] *Scarsella v Pollak*, 461 Mich 547; 607 NW2d 711 (2000).

I write separately to note that my support for the Court's opinion is consistent with my continuing support of this Court's decision in *Kirkaldy v Rim*,[2] in which this Court held that "the proper remedy" when a court finds an affidavit of merit to be defective "is dismissal without prejudice," leaving the plaintiff with "whatever time remains in the period of limitations within which to file a complaint accompanied by a conforming affidavit of merit." In addition, the Court today offers reassurance that trial courts will retain discretion to regulate the pleadings in a medical malpractice case.[3] Having acceded that a trial court may take action to address "an intentional violation of [MCL 600.]2912d to create additional time for filing an AOM or otherwise improperly delay the proceedings," the Court today ensures that amendments to AOMs under MCR 2.112 and MCR 2.118 will now properly be viewed as " 'merely "permissive in nature" and . . . not run afoul of *Kirkaldy*.' "[4]

And this is precisely how the trial court acted under the court rules by exercising its discretion to permit plaintiffs to file their late AOM and allowing it to relate back to the April 2019 complaint. Here, the AOM was executed before the original complaint was filed and clearly had been inadvertently omitted when the complaint was filed. As trial

---

[2] *Kirkaldy v Rim*, 478 Mich 581, 586; 734 NW2d 201 (2007). See, e.g., *Ligons v Crittendon Hosp*, 490 Mich 61; 803 NW2d 271 (2011), and *Legion-London v Surgical Institute of Mich Ambulatory Surgery Center, LLC*, 508 Mich 1006, 1006; 967 NW2d 381 (2021) (ZAHRA, J., dissenting).

[3] See *Legion-London*, 508 Mich at 1009-1010 (ZAHRA, J., dissenting).

[4] *Id.*, quoting MCR 2.112 and MCR 2.118, 485 Mich cclxxv, cclxxix-cclxxx (KELLY, C.J., concurring).

2

courts are no longer bound by *Scarsella*'s overly broad holding, they are now permitted to

rely on our court rules to regulate pleadings in medical malpractice cases.

Although the Court overrules *Scarsella*, I would add that *Scarsella* reached the

correct result in that case by affirming the trial court's decision denying the plaintiff's

attempt to amend the AOM. *Scarsella* was concerned about gamesmanship following the

then-recent adoption of medical malpractice reforms.[5]

---

[5] This Court has previously resolved concerns of gamesmanship under MCL 600.2912d and MCL 600.2912e. For instance, in *Saffian v Simmons*, 477 Mich 8, 13; 727 NW2d 132 (2007), the Court rejected the questionable practice of allowing a defendant

> to determine unilaterally whether the plaintiff's affidavit of merit satisfies the requirements of MCL 600.2912d. As the Court of Appeals majority pointed out in ruling for plaintiff, when an affidavit is filed, it is presumed valid. It is only in subsequent judicial proceedings that the presumption can be rebutted. As is evident, no such presumption arises when no affidavit is filed.

I was a member of the Court of Appeals panel in *Saffian v Simmons*, 267 Mich App 297; 704 NW2d 722 (2005), and I maintain my support for the panel's decision on the above point.

I partially concurred in the majority's opinion. I found unclear the factual basis on which "the trial court concluded that defendant fabricated his claim that the failure to transmit the summons and complaint to his insurer was the product of excusable clerical error," and I would have "vacate[d] the default and remand[ed] for further factual findings on whether defendant had fabricated this claim." *Saffian*, 267 Mich App at 310 (ZAHRA, J., concurring in part).

In regard to remedy, I posited:

> If the trial court concludes that defendant fabricated the facts supporting his motion to set aside the default, the default judgment should be reinstated and the trial court should impose monetary sanctions against defendant pursuant to MCR 2.114(E). If, however, the trial court concludes that defendant's claim of excusable clerical error was not fabricated, the trial court abused its discretion by reinstating the default. The ensuing default judgment should

The Court today declines to "decide whether, and under what circumstances, dismissal with prejudice is appropriate[.]" I would submit that *Scarsella* itself presents facts that would justify the trial court's decision to dismiss the case with prejudice. There, the plaintiff filed a medical malpractice complaint against the defendant, approximately two to three weeks before the plaintiff's claim would be barred by the applicable two-year limitation period. The plaintiff did not file an AOM with the complaint, nor did the plaintiff move for a 28-day extension in which to file an AOM. The defendant filed a motion seeking summary disposition for failure to comply with MCL 600.2912d(1). Some 213 days later—two days before the trial court heard the defendant's motion—the plaintiff finally filed an AOM.

In my view, the date on which the AOM is executed is highly telling in regard to the question whether a plaintiff has intentionally failed to comply with MCL 600.2912d(1). While *Scarsella* did not mention the date on which the AOM was executed, it seems rather obvious that it had not been executed until long after the complaint had been filed and after the statutory limitations period had passed. Here, on the other hand, plaintiffs responded in less than less four business days after learning that the AOM had been omitted. And when plaintiff here did respond, plaintiff submitted an AOM that had been executed months before the case was filed. In cases where the AOM was executed before the

be set aside, and the trial court should rule on defendant's motion for summary disposition. [*Id*.]

I also dissented in part from that opinion. I maintain, as in *Saffian*, that "where there are allegations indicating that fraud has been committed on the court, it is generally an abuse of discretion for the court to decide the motion without first conducting an evidentiary hearing into the allegations." *Id*. at 316 (ZAHRA, J., dissenting in part). As later discussed, gamesmanship does not appear to be a factor in this case.

4

complaint was filed, I would presume the AOM to be valid such that dismissal is either unnecessary or dismissal without prejudice would be appropriate.

The date of the AOM's execution itself provides the most significant evidence in deciding whether a plaintiff has intentionally violated MCL 600.2912d to create additional time for filing an AOM or otherwise improperly delay the proceedings. If, as in *Scarsella*, the AOM was not executed until after the statutory limitations period had passed, the AOM should not be afforded the same presumption of validity, leaving to the trial court's discretion whether dismissal with prejudice is appropriate.

Last, while I agree with the Court that a stare decisis analysis supports the overruling of *Scarsella*, contrary to the Court, I believe that changes in the law weigh in favor of overruling *Scarsella*. In *Kirkaldy*, the Court relied on the presumption that a filed AOM is presumed valid to distinguish between cases in which an AOM had not been filed and those in which a defective, but presumably valid, AOM had been filed. Then, in *Saffian*, this Court held that

> where an affidavit of merit is filed with a medical malpractice complaint, a defendant must timely answer or otherwise file some responsive pleading to the complaint, or else be subject to a default. A defendant's unilateral belief that the affidavit of merit does not conform to the requirements of MCL 600.2912d does not constitute "good cause" for failing to respond timely to a medical malpractice complaint, and thus is not a proper basis to challenge the entry of a default.[6]

In keeping with *Saffian*, a defendant must answer a complaint. And if no AOM is attached to the complaint, a defendant must still answer the complaint and presume that a plaintiff is seeking an extension to file an AOM. In a very real way, *Scarsella* has now

---

[6] *Saffian*, 477 Mich at 16.

5

largely been eroded by caselaw and amendments to court rules, namely MCR 2.112 and MCR 2.118, all directed toward alleviating a disorderly pleading process in medical malpractice cases. In other words, the instant case is another mechanism to improve the "orderly process of honoring the presumption of the validity of pleadings, requiring an answer, and then allowing the defendant to challenge the affidavit," which "reduces the chaotic uncertainty that allowing the defendant to decline to answer would introduce."[7] As the *Saffian* Court observed:

> [T]his rule advances the efficient administration of justice because to allow defendants to nitpick plaintiffs' affidavits and, upon discovering an imperfection, to decline to answer surely leads, as it did here, to challenged default judgments and the hearings those entail. On the other hand, no such hearings are necessitated if the procedure is to require an answer and then a motion by the defendant to challenge the affidavit. This approach will conserve judicial resources and is advisable for that reason.[8]

Since I believe that the majority's opinion is consistent with the line of the above-mentioned cases maintaining a more orderly and efficient administration of justice, I concur with the Court's opinion.

Brian K. Zahra

BOLDEN, J., did not participate in the disposition of this case because the Court considered it before she assumed office.

---

[7] *Id*. at 14.

[8] *Id*.